

*U.S. Department of Justice*

*United States Attorney*
*District of Maryland*
*Southern Division*

---

| | | | |
|---|---|---|---|
| *David I. Salem* | *Mailing Address:* | *Office Location:* | *DIRECT: 301-344-4237* |
| *Assistant United States Attorney* | *6500 Cherrywood Lane, Suite 200* | *6406 Ivy Lane, 8th Floor* | *MAIN: 301-344-4433* |
| *David.Salem@usdoj.gov* | *Greenbelt, MD 20770-1249* | *Greenbelt, MD 20770-1249* | *FAX: 301-344-4516* |

May 21, 2021

The Honorable Paula Xinis
United States District Court
District of Maryland
6500 Cherrywood Lane
Greenbelt, MD 20770

  Re: *United States v. Jeremy Schulman*
     Criminal No.: PX-20-0434

Dear Judge Xinis:

  The Government submits this letter in response to Defendant Jeremy Schulman's letter dated May 14, 2021 captioned "*Giglio* Discovery" (the "May 14 Letter"). (ECF 33.) In the May 14 Letter, the Defendant seeks leave to move to compel the production of all impeachment evidence related to Abdiazaz Amalo. May 14 Letter at 3. The Government has always intended to produce appropriate discovery material in a "timely" fashion, consistent with its obligations under Rule 16, *Brady* and *Giglio*. Defendant is requesting early disclosure as either an exception to these obligations, or creating a new obligation, while incorrectly couching it as the government's failure to timely produce these materials. Good-faith efforts to explain that early disclosure is not warranted here have been unsuccessful, and thus the Government does not object to the Defendant's request for leave to file a motion. The Government briefly sets forth below how it plans to comply with its obligations to disclose these materials, why the Defendant's *Giglio* request is not based in the law, and the accommodations it has made in response to Defendant's request.

  **I.** **The Government Has Produced Exculpatory Information Under *Brady* And Intends To Produce the Requested *Giglio* Material In A Timely Manner Such That The Defense May Make Effective Use Of It**

  Contrary to Defendant's contention, the Government intends to, and has always intended to, make a timely production of *Giglio* material. As reflected in the Defendant's letter, May 14 Letter at 2, n. 1, the Government has produced potential *Brady* material, including, but not limited to, potential *Brady* material as it relates to Mr. Amalo, and is aware of its ongoing obligations related to *Brady* and *Giglio*. The Defendant has not identified any case law that requires all *Giglio* materials to be produced prior to a trial date even being set. In fact, the cases cited by the Defendant support the Government's position that disclosure is not warranted at this time, and Defendant has not identified any reason why this precedent should not be followed and why a new rule requiring early disclosure should be adopted by the Court.

The Government is aware that due process requires that disclosure of exculpatory and impeachment evidence material to guilt or innocence be made in sufficient time to permit the defendant to make effective use of that information at trial. *See, e.g. Weatherford v. Bursey*, 429 U.S. 545, 559 (1997). "[T]here is no Brady violation if the defense is aware of the evidence in time to reasonably and effectively use it at trial." *United States v. Jeffers*, 570 F.3d 557, 573 (4th Cir. 2009). Nothing in the case law, however, requires disclosure of the all *Brady/Giglio* information for the entire case or for a specific witness before a trial date has been set. The precise timing at which *Brady* or *Giglio* evidence must be disclosed depends on the specific nature of the evidence at issue. *United States v. Beckford*, 962 F. Supp. 780, 788 (E.D. Va. 1997). The May 14 Letter does not cite any legal authority establishing that the Government is obligated to disclose all the *Giglio* impeachment material now, when (1) the Government has completed extensive discovery, including production of potential *Brady* material related to Mr. Amalo; (2) no trial date is scheduled; and (3) trial does not appear imminent because of Covid-19-related scheduling complications and the likelihood of extensive pre-trial litigation.

The two cases cited by the Defendant, *United States v. Elmore*, 423 F.2d 775 (4th Cir. 1970) and *Beckford*, May 14 Letter at 2, support the Government's position rather than the Defendant's position. *See Elmore*, 423 F.2d at 779 ("under these circumstances we think that *at the most* the government should have only been required under *Brady* to disclose [this] statement *after [the witness] had testified*") (emphasis added). In *Beckford*, the defendants' pre-trial motions, like the contemplated motion here, sought "production of any proffer statements made by Government witnesses to Government agents" and the plea agreements of four expected government witnesses. *Beckford*, 960 F. Supp. at 803. The court held that the Government *at the earliest* was required to produce some categories of *Brady* information approximately six weeks before the commencement of trial, whereas other information could be produced three days before the commencement of trial. *Id* at 795, 803. These precedents do not favor, let alone compel, the early disclosure of all *Brady* and *Giglio* information sought by the Defendant here. [1]

## II. Production of Early *Giglio* Would Put Witnesses at Risk and Prejudice a Fair Trial for No Compelling Reason

Not only is the Government not required to make the early disclosure sought by the Defendant, but courts have long recognized the important interests put at risk by such early disclosure. In *Beckford*, the Fourth Circuit stated, "It is important . . . to remain mindful that the determination of 'effective use' should not be judged solely from the perspective of the defense counsel. Lawyers, of course, always would prefer to know information well in advance of trial. But countervailing considerations may necessitate delayed disclosure." *Beckford*, 960 F. Supp. at 792. Those considerations include "the protection of Government witnesses from influence, threats, harassment, and physical harm," *id.* at 795—all of which are fundamental to a fair trial.

The Government here has a tangible concern that the Defendant or his co-conspirators could seek to improperly influence or threaten potential witnesses. Among other things, it has been publicly reported that former Central Bank Governor Yussur Abrar stated, in a resignation letter she submitted in approximately October 2013, that her security was put at risk by persons

---

[1] The May 14 Letter also mischaracterizes the Justice Manual's provisions governing criminal discovery. Regardless, the Justice Manual "is not intended to, does not, and may not be relied upon to create any rights, substantive or procedural, enforceable at law by any party in any matter civil or criminal." Justice Manual, 1-1.200.

working with the Defendant.² Moreover, the Defendant's purported justification for such early disclosure—the need to have the information so he can "conduct extensive fact investigations outside the United States," May 14 Letter at 3—is a canard. The Defendant has ample information to use in preparing his defense, including seven discovery productions, totaling more than 489,000 pages, and a detailed, 30-page indictment.

More specifically, the Defendant already has extensive information about Mr. Amalo. The two of them worked together throughout the five-year period (2009-2014) described in the indictment. In the three years that followed, the Defendant continued to collaborate with Mr. Amalo on various ventures, including Mr. Amalo's aborted campaign for President in Somalia, until Mr. Amalo was arrested on federal charges; the Defendant even attended Mr. Amalo's arraignment. Further, the Government's discovery productions to date have included extensive communications and materials obtained from Mr. Amalo. Accordingly, the Defendant has failed to show that early disclosure of information related to Mr. Amalo's statements to the Government is necessary to prepare his defense.

### III.   The Government Intends to Comply with Its *Brady*/*Giglio* Obligations

As noted above, the Government fully understands and appreciates that, pursuant to *Brady*, *Giglio*, and its progeny, the Government is required to disclose evidence that is "both favorable to an accused and 'material to either guilt or punishment;'" and that this requirement generally includes the disclosure of evidence that could potentially be used to impeach or discredit a government witness. We intend to produce discovery of all material that is required to be produced pursuant to Rule 16, *Brady, Giglio* and the Jencks Act, and that is within our possession, custody, or control. Further, we anticipate making a disclosure before June 1, 2021, of certain information that arguably constitutes *Brady* information related to Mr. Amalo.

Respectfully submitted,

DANIEL KAHN
Acting Chief
Fraud Section

JONATHAN F. LENZNER
Acting United States Attorney
District of Maryland

/s/
Jason M. Manning
Amy Markopoulos
Trial Attorneys

/s/
David I. Salem
Assistant United States Attorney

---

² Drazen Jorgic, "Insight: Graft allegations test West's ties Somali President," Reuters (Feb. 14, 2014), *available at*: https://www.reuters.com/article/us-somalia-corruption-insight/insight-graft-allegations-test-wests-ties-to-somali-president-idUSBREA1D08P20140214.