Akin Gump Strauss Hauer & Feld LLP
Robert S. Strauss Tower
2001 K Street, N.W.
Washington, DC 20006

T   +1 202.887.4000
F   +1 202.887.4288
akingump.com



**Paul W. Butler**
+1 202.887.4069 /fax: +1 202.887.4288
pbutler@akingump.com

April 15, 2024

The Honorable Paula Xinis
United States District Judge
c/o Clerk's Office
United States District Court
District of Maryland
6500 Cherrywood Lane
Greenbelt, MD 20770-1249

> Re:   *United States v. Jeremy Schulman* (Cr. No. PX-20-434) – Correspondence regarding Foreign Deposition Testimony of Florence Parker

Dear Judge Xinis:

Mr. Schulman, by and through counsel, respectfully submits this correspondence in response to the Court's Letter Order dated April 12, 2024, ECF No. 423. No factual basis exists for Ms. Parker to testify that (a) she had decision-making authority to release assets from the government of Somalia's accounts at Citibank Switzerland ("Citibank") or (b) she had knowledge of Citibank's decision-making process. The Court should limit Ms. Parker's testimony regarding Citibank's decision to release assets from the government of Somalia's accounts.

Additionally, Ms. Parker's testimony does not relate to a fact in issue. Ms. Parker's subjective testimony, even if admitted, could not establish the materiality of Mr. Schulman's representations. The standard set forth in *United States v. Raza*, 876 F.3d 604 (4th Cir. 2017), requires the government to establish that Mr. Schulman's alleged misrepresentations were capable of influencing a reasonable lender under an objective standard and in consideration of the "intrinsic capabilities of the false statement itself." *Id.* (quoting *United States v. Lindsey*, 850 F.3d 1009, 1015 (9th Cir. 2017)). Ms. Parker's testimony does not bear upon this objective standard and should be excluded.

**I.      Ms. Parker's Testimony Should be Limited.**

The Court should exclude Ms. Parker's testimony as to whether Citibank would have released the assets *but for* the receipt of certain documentation by Citibank for three reasons: ***first***, the government did not establish that Ms. Parker had decision-making authority regarding the release of the assets. As such, Ms. Parker's testimony of what she would have done under hypothetical circumstances is unsubstantiated and should not be heard by the jury. ***Second***, the



The Honorable Paula Xinis
April 15, 2024
Page 2

government did not establish that Ms. Parker had knowledge of Citibank's decision-making process. As such, Ms. Parker is not qualified to testify regarding Citibank's decision to release assets. **Third**, the privileged nature of Ms. Parker's discussions barred any inquiry into Citibank's decision-making process. As such, Ms. Parker's testimony regarding Citibank's decision did not reflect the actual decision-making process but rather is speculative and inadmissible.

*First*, the government did not establish Ms. Parker's decision-making authority to release the assets. Ms. Parker testified that she discussed the documents provided by Mr. Schulman with others at Citibank. *See* Transcript, Deposition of Florence Parker ("Tr.") at 72:15-16 ("we had internal decisions"). When asked whether Ms. Parker was involved in Citibank's decision to release assets, Ms. Parker responded, "Yes, I was – I was *involved*, yes." Tr. 27:10-14 (emphasis added). Ms. Parker later explained that the General Counsel—someone who certainly held more decision-making authority than Ms. Parker—was also involved in these discussions. *See* Tr. at 117:5-13 ("Q: Your determination also involved to speaking with others at the bank about providing Mr. Schulman access? A: Yes. Q: Including Bernard Lancin? A: Yes. Q: Who was then the General Counsel for Citibank Switzerland. A: Yes.").

Further, Ms. Parker repeatedly referred to Citibank's procedures as involving multiple decision-makers. *See e.g.*, Tr. at 34:2-8 ("this is something *we* can use in order to verify…", 50:12-14 ("Usually *we* need like a Power of Attorney letter…"), 53:15-21 ("the bank had lost touch with the holder of these accounts. We did not have an address for them. So *we* had to reconnect with them. And in order to do so, *we* needed to have proof of who they were…"), 62:18-20 ("*we* needed these two documents to certify who was authorized to represent the Bank of Somalia"), 71:4-7 ("Generally speaking, when *we* receive a document from an attorney, this does add to the trust that *we* place in the documents that we receive from him.").

Because the government did not establish Ms. Parker's knowledge of, awareness of, or responsibility for Citibank's decision-making process, Ms. Parker's testimony regarding what she would have done under hypothetical circumstances is unsubstantiated and should not be heard by the jury.

*Second*, the government did not establish Ms. Parker's knowledge of Citibank's decision-making process. Without such foundation, Ms. Parker is not qualified to testify regarding Citibank's decision to release the assets. Ms. Parker testified that she is infrequently involved in verifying third-party access to accounts. *See* Tr., at 99:10-22 ("Q: And for other clients, you have been asked to verify the authority of a third party to access an account, correct? A: Yes, it happens."). While Ms. Parker testified that it is the "[s]tandard procedure . . . to ask for a Power of Attorney letter," Ms. Parker did not testify about the additional procedures taken by Citibank to permit third party access to an account following receipt of a power of attorney—either in this case or generally. *See* 53:6-21. In fact, Ms. Parker testified that even where a power of attorney is provided, Citibank may still deny a third-party request for access to an account. Tr. at 99:10-22



The Honorable Paula Xinis
April 15, 2024
Page 3

("Q: And for other clients, you have been asked to verify the authority of a third party to access an account, correct? A: Yes, it happens. . . Q: And sometimes, you deny access to an account? A: It happens, yes.").

Together, this testimony shows the government's failure to lay a foundation as to Ms. Parker's knowledge of Citibank's decision-making process. Ms. Parker merely testified that she requested certain documentation as part of Citibank's standard procedure. Ms. Parker did not testify regarding Citibank's use of that documentation or internal discussions at Citibank regarding that documentation. Accordingly, the Court should exclude Ms. Parker's testimony as to these topics.

**Third**, Citibank counsel objected that Ms. Parker was acting as counsel for Citigroup in discussions regarding the release of assets. This objection barred any further inquiry into the Citibank's decision-making process or Ms. Parker's particularized knowledge of that decision-making process. *See* Tr. at 72:19-73:2 (Apr. 25, 2023) ("Q: And did you yourself recommend that Mr. Schulman be given access to the accounts as part of that process? Mr. Schwartz: I'm going to object that Ms. Parker was acting as counsel for Citigroup and her advice to the bank is privileged under US law."). Nonetheless, the government pursued an improper line of questioning regarding what Ms. Parker would have done under particular circumstances. *See* Tr. 73:8-10 ("Can you tell us whether Mr. Schulman would have been granted access to these accounts by the bank if you had objected?"); 77:4-6 ("[W]ould *you* have provided Mr. Schulman with access to the accounts if you had not received this documentation?"); 78:3-5 ("If *you* had believed that the [decree translation and 2009 Prime Minister letter] had been falsified, would that have impacted your recommendation?").

In light of counsel's privilege objection, Ms. Parker's answers to Mr. Manning's subsequent questions did not reflect Citibank's actual decision-making process, or her knowledge of that decision-making process, but rather speculated as to what Ms. Parker would have done under different circumstances. These answers are thus inadmissible. Additionally, should the government seek the admission of these statements, notwithstanding Citibank counsel's privilege objection, defense counsel was not entitled to cross-examine Ms. Parker on the privileged, internal discussions, such that Ms. Parker's responses to the government's questions should be excluded.[1]

**Finally**, Citibank Switzerland's transfer of funds relates only to the indictment's charge of conspiracy and does not bear upon the indictment's substantive charges. The government is not tasked with proving Citibank Switzerland's reliance on Mr. Schulman's representations to establish the elements of a conspiracy. The exclusion of this limited testimony will not impact the

---

[1] The admission of this testimony would mislead the jury, as Citibank counsel's privilege objection barred a full inquiry into Citibank's reliance on the documents provided by Mr. Schulman.

Case 8:20-cr-00434-PX   Document 431   Filed 04/15/24   Page 4 of 4



The Honorable Paula Xinis
April 15, 2024
Page 4

government's ability to prove the charge of conspiracy, but will greatly prejudice Mr. Schulman if admitted, as it will mislead the jury as to Citibank Switzerland's reliance on certain documents. *See* Fed. R. Evid. 403.

**II.     Ms. Parker's Testimony Does Not Relate to a Fact in Issue.**

The testimony in dispute relates to Ms. Parker's speculation as to how she would have responded to hypothetical situations posed by the government's attorney. This testimony does not relate to a fact in issue because it does not bear on the materiality of Mr. Schulman's alleged misrepresentations.

The test for materiality is objective. It "measures a misrepresentation's capacity to influence an objective 'reasonable lender.'" *United States v. Raza*, 876 F.3d 604, 621 (4th Cir. 2017). "A false statement is material if it has a natural tendency to influence, or is capable of influencing, the decision of the decisionmaking body to which it was addressed." *Neder v. United States*, 527 U.S. 1, 4 (1999). In this way, the materiality inquiry bears less upon the statements' subjective effect on the bank and more upon the intrinsic capability of the statement to mislead. *Raza*, 876 F.3d at 619.

At Ms. Parker's deposition, the government inquired into the decision-making process at Citibank. This line of inquiry was met with an objection for privilege. The government's attorney was subsequently limited to questioning Ms. Parker as to her subjective opinions regarding what she would have done if she had received false documents. Ms. Parker's answers are not elucidative under the applicable materiality standard. The testimony at issue should be excluded.

Sincerely,

Paul W. Butler
Allison T. Coffin
Madeline M. Bardi
*Counsel for Jeremy Wyeth Schulman*

cc:     Stanley E. Woodward Jr., Esq., Brand Woodward Law