IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) |
| | ) |
| JEREMY WYETH SCHULMAN | ) Crim. No. PX-20-0434 |
| | ) |
| | ) |
| Defendant. | ) |
| | ) |

**GOVERNMENT'S OPPOSITION TO MOTION *IN LIMINE* TO
EXCLUDE TESTIMONY OF YUSSUR ABRAR [ECF 439]**

The United States, by and through its undersigned counsel, respectfully submits this opposition to Defendant Jeremy Schulman's Motion *in Limine* to Exclude Testimony of Yussur Abrar. ECF 439. Schulman contends that he would be prejudiced if the Court permits former Central Bank Governor Yussur Abrar ("Abrar") to testify at trial due to the unavailability of witnesses who could allegedly rebut her testimony. Schulman has not and cannot identify any unfair prejudice that would substantially outweigh Abrar's highly relevant, probative testimony. For the reasons discussed below, Schulman's motion should be denied.

**RELEVANT BACKGROUND**

Abrar is a dual citizen of the United States and Somalia, who served as Somalia's Central Bank Governor from approximately September 1, 2013 through October 30, 2013. ECF 1 ¶ 12. In furtherance of the conspiracy, Schulman, Abdiaziz Amalo, and Co-Conspirator 1 pressured Abrar to ratify a contract with Shulman Rogers and a related power of attorney, both of which had been previously signed by the previous Central Bank Governor, Abdusalam Omer, or to execute new versions. *Id.* ¶ 48. These documents purported to give Schulman power to act on behalf of the Central Bank to recover Somalia's frozen assets. *Id.* ¶ 46.

1

In her capacity as Central Bank Governor, Abrar interacted directly with Schulman, including through multiple in-person meetings and email correspondence about Schulman's representation of the Somali government and role in recovering Somalia's frozen assets. *See* ECF 362-31 (Abrar Interview Report, dated Aug. 8, 2014); ECF 362-32 (Abrar Interview Report, dated Nov. 29, 2017). Abrar questioned the payment terms in the Shulman Rogers contract signed by Abdusalam Omer and repeatedly asked Schulman to provide her with an accounting of the frozen Somali assets, which Schulman refused to do. *See id.* In addition to introductory background about the Central Bank of Somalia, the Government anticipates that Abrar's trial testimony will include, in sum and substance, the following information memorialized in previous FBI interview memoranda:

- In a meeting with Schulman, Amalo, and Co-Conspirator 1, Abrar "told them that the Power of Attorney and fees for SCHULMAN [*sic*] ROGERS were unacceptable." Abrar "asked them for a list of Somali assets that had been frozen" and explained that it was unacceptable for the Central Bank's assets to go to a Shulman Roger's bank account first, rather than to the Central Bank's account. ECF 362-31 at 3.

- Schulman refused to show Abrar the list of frozen Central Bank assets. *Id.*

- Schulman told Abrar that Co-Conspirator 1 "did not work for [Schulman]" and that paying Co-Conspirator 1 "could be a FCPA violation."[1] *Id.* at 4.

- In another in-person meeting with Schulman, Abrar asked for the list of Somali assets, and Schulman again refused to provide it. *Id.*

- In a conversation with Schulman, Abrar told Schulman that she "wanted to get a second opinion on the [Shulman Rogers] contract" and that she had contacted a lawyer in Boston. Abrar told Schulman that she had "no problem with the contract as long as the law firm in Boston agrees." *Id.*

- Abrar told Co-Conspirator 1 and Schulman that "the Somalia funds cannot go to Shulman Rogers. The funds must go to the Central Bank of Somalia." ECF 362-32 at 4.

---

[1] The Indictment charges that $320,000 of criminal proceeds were transferred by Amalo to companies controlled by Co-Conspirator 1. *See* Ind., Counts Eight through Eleven.

- Abrar asked Schulman for the list of assets, but "Schulman told her that the list could only be shown to President Mohamud. Abrar told Schulman that would not work because if she does not know where the assets are held then she cannot see what Shulman Rogers collected. Abrar told Schulman that withholding the list of assets from her was a non-starter." *Id.*

- Several days later, Schulman again asked Abrar to sign the power of attorney. Abrar "refused to sign the Power of Attorney which gave Shulman Rogers control over the assets. She had a problem with the lack of accountability of the assets going to Shulman Rogers." For example, "she would have no way of knowing whether Shulman Rogers received $1 million dollars or $11 million dollars." *Id.* at 5.

- Schulman told Abrar that the power of attorney is "normal" and "how they do it in New York." Schulman further told Abrar that the recovered funds would go into a Shulman Rogers escrow account. *Id.* at 6

- When Abrar asked Co-Conspirator 1 why he was working with Schulman to recover the Somali assets, Co-Conspirator 1 stated that "some of the money recovered was going to the president."[2] *Id.*

- Abrar resigned as Central Bank governor because she became concerned for her safety. *Id.* at 6–7.[3]

Schulman's, Amalo's, and Co-Conspirator 1's dealings with Abrar are among the overt acts in furtherance of the conspiracy charged in Count 1. ECF 1 ¶¶ 46–48.

## LEGAL STANDARD

A district court "may exclude relevant evidence if its probative value is substantially outweighed by the danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "[W]here

---

[2] As stated in the Government's trial brief, ECF 414 at 11, in the event that the Government seeks to introduce testimony from a witness about out-of- court statements from a non-testifying co-conspirator, such as Co-Conspirator 1, the Government will raise in advance with the Court any such statements to allow the Court and defense counsel to consider any threshold evidentiary issues before the information is presented to the jury. *See, e.g., Bourjaily v. United States*, 483 U.S. 171, 175 (1987); *United States v. Blevins*, 960 F.2d 1252, 1255 (4th Cir. 1992).

[3] The Government does not intend to elicit specific details regarding the threats Co-Conspirator 1 and others made to her safety, but rather, the general fact that she resigned as Central Bank Governor, in part, due to concerns for her safety.

evidence is probative, 'the balance under Rule 403 should be struck in favor of admissibility, and evidence should be excluded only sparingly.'" *United States v. Miller*, 61 F.4th 426, 429 (4th Cir. 2023) (citations and quotations omitted).  Rule 403 "is a rule of inclusion, generally favoring admissibility," *United States v. Udeozor*, 515 F.3d 260, 264–65 (4th Cir. 2008) (cleaned up), and it sets a "high bar" for exclusion.  *Miller*, 61 F.4th at 429.  In other words, "[w]here the evidence is probative, 'the balance under Rule 403 should be struck in favor of admissibility, and evidence should be excluded only sparingly.'"  *United States v. Lentz*, 524 F.3d 501, 525 (4th Cir. 2008) (quoting *United States v. Aramony*, 88 F.3d 1369, 1378 (4th Cir. 1996)).

To exclude evidence, "it must be unfairly prejudicial."  *Miller*, 61 F.4th at 429.  "[U]nfair prejudice speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *United States v. Tillmon*, 954 F.3d 628, 643 (4th Cir. 2019) (quoting *United States v. Basham*, 561 F.3d 302, 327 (4th Cir. 2009)); *see also Old Chief v. United States*, 519 U.S. 172, 180 (1997).  Thus, evidence is inadmissible "only if there is a genuine risk that the emotions of a jury will be excited to irrational behavior, and this risk is disproportionate to the probative value of the offered evidence." *United States v. Jones*, 678 F. Supp. 3d 649, 654 (D. Md. 2023) (citations omitted).  "[D]amage to a defendant's case is not a basis for excluding probative evidence," however, because "[e]vidence that is highly probative invariably will be prejudicial to the defense."  *United States v. Grimmond*, 137 F.3d 823, 833 (4th Cir. 1998); *see also United States v. Cooper*, 482 F.3d 658, 663 (4th Cir. 2007) ("Evidence of criminal acts is of course by nature prejudicial, but the standard for exclusion under Rule 403 is 'unfair' prejudice."); *United States v. Hammoud*, 381 F.3d 316, 341 (4th Cir. 2004) ("The mere fact that the evidence will damage the defendant's case is not enough—the evidence must be *unfairly* prejudicial, and the "unfair prejudice must *substantially* outweigh the

4

probative value of the evidence.") (emphasis in original) (internal quotation marks omitted), *vacated on other grounds*, 543 U.S. 1097 (2005).

## ARGUMENT

Abrar's anticipated testimony about her interactions with Schulman is highly relevant and probative of Schulman's knowledge, intent, and *mens rea*. It is also integral proof of the charged conspiracy. *See* Ind. ¶¶ 46–48. Abrar raised concerns about the Shulman Rogers contract and related power of attorney to Schulman, repeatedly requested that Schulman provide her with the list of Somali assets (a request which Schulman denied), and explained to Schulman that recovered Somali funds should be sent directly to the Central Bank, rather than passing through Shulman Rogers first.

Schulman does not dispute that Abrar's testimony is relevant. Instead, he contends that what he identified as her expected testimony "is unfairly prejudicial, confuses the issues, and misleads the jury." ECF 439 at 4. Rather than address the substance of Abrar's anticipated testimony—her actions related to Shulman Rogers and her interactions with Schulman and Co-conspirator 1, ECF 414 at 11—Schulman argues that Abrar should not be permitted to testify *on any topic* because President Hassan Sheikh Mohamud, former Foreign Minister Fawzia Adam, and former Central Bank Governor Abdusalam Omer are not available to testify at trial. ECF 439 at 4. To support his argument, Schulman points to certain statements Abrar made to investigators that the Government does not intend to elicit from Abrar at trial, such as Abrar's conversations with President Mohamud and Fawzia Adam. *Id.* at 2. Schulman's strawman misses the mark.

As an initial matter, the unavailable witnesses Schulman identifies never could have provided any admissible testimony about Abrar's interactions with Schulman and Shulman

5

Rogers, and thus, their absence at trial is not prejudicial to Schulman.[4] Schulman offers no explanation for what testimony President Mohamud, Fawzia Adam, and Abdusalam Omer could provide about Abrar's conversations with Schulman. Nor could he, since none of these unavailable witnesses were present for Abrar's conversations with Schulman, and they were not copied on Abrar's email exchanges with Schulman. At bottom, Schulman's motion is an attempt to exclude *all* of Abrar's trial testimony because unavailable witnesses could theoretically contradict testimony that the Government does not intend to elicit. That argument is meritless.

Furthermore, evidence about what a sitting Somali Central Bank Governor—regardless of the length of her term in office—told Schulman in her official capacity, as well as Schulman's responses to her and his actions afterward, are highly relevant proof of the charged conspiracy and probative of Schulman's knowledge, state of mind, and fraudulent intent. The Government has the burden of proving at trial that Schulman's efforts to obtain control of frozen Somali assets were part of a scheme to defraud. Schulman can be expected to argue to the jury that, to the contrary, he was merely acting appropriately as an attorney on behalf of the Somali government. To evaluate these competing contentions, the jury should be permitted to hear about Schulman's unwillingness to provide the Governor of the Central Bank of Somalia with the information he had about the location of frozen Somali assets. The jury should also be permitted to hear Abrar's testimony showing that Schulman was unwilling to accede to her request that the frozen Somali assets be sent directly to the Central Bank of Somalia, rather than to Shulman Rogers. When "the evidence sought to be excluded under Rule 403 is concededly probative, the balance under Rule 403 should be struck in favor of admissibility, and evidence should be excluded only sparingly." *Aramony*, 88 F.3d at 1378; *see also Miller*, 61 F.4th at 429 ("In contrast to such unfairly prejudicial evidence,

---

[4] As the Court has already found, the Government does not have control over of these witnesses. *See* Apr. 11, 2024 Hr'g Tr. at 78:4–23. *See also* ECF 368 at 1–15.

we have found prejudicial evidence admissible when it 'directly establishe[s] an element of the offense.'") (citation omitted); *Grimmond*, 137 F.3d at 833 ("It is worth remembering that the touchstone for excluding evidence under Rule 403 is not prejudice, but 'unfair' prejudice. Moreover, unfair prejudice must 'substantially' outweigh the probative value of the evidence.").

Schulman has not and cannot show that the probative value of this evidence is *substantially outweighed* by a danger of unfair prejudice, confusing the jury, or wasting time. Beyond a recitation of Rule 403 and irrelevant complaints about unavailable witnesses, Schulman provides no explanation for why Abrar's testimony about her interactions with Schulman should be excluded from the jury. Indeed, the only prejudice that Schulman could identify from this testimony is that the jury will hear inculpatory evidence against him. *See United States v. Queen*, 132 F.3d 991, 998 (4th Cir. 1997) (district court did not abuse discretion by admitting evidence that "was prejudicial, [but] it was only prejudicial because it was so highly probative"). Abrar's anticipated testimony does not invite the jury to substitute emotion for reason in their deliberations, nor would her testimony cause any confusion about the charges against Schulman, particularly where Schulman's counsel will have ample opportunity to cross examine her. As such, Schulman has not met Rule 403's "high bar" for excluding relevant, probative testimony, and his motion should be denied. *Miller*, 61 F.4th at 429; *see also United States v. Balde*, 616 F. App'x 578, 582 (4th Cir. 2015) (finding no error in district court's admitting challenged evidence that "was relevant to the history of the formation of the conspiracy, as well as [defendant's] motive, intent and knowledge").

## **CONCLUSION**

For the foregoing reasons, the Government submits that the Court should deny defendant Jeremy Schulman's motion exclude Yussur Abrar from testifying at trial.

Respectfully submitted,

| | |
|---|---|
| GLENN LEON | EREK L. BARON |
| Chief | United States Attorney |
| Fraud Section | District of Maryland |
| | |
| /s | /s |
| Jason M. Manning | David I. Salem |
| Allison L. McGuire | Assistant U.S. Attorney |
| Trial Attorneys | |