IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Greenbelt Division

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | Criminal Case No. PX-20-0434 |
| | : | |
| **JEREMY WYETH SCHULMAN** | : | |

**DEFENDANT JEREMY WYETH SCHULMAN'S REPLY IN SUPPORT
OF HIS MOTION TO EXCLUDE EXPERT TESTIMONY OR, IN THE ALTERNATIVE,
COMPEL SUPPLEMENTARY EXPERT DISCLOSURE UNDER RULE 16(A)(1)(G)(III)**

Defendant Jeremy Wyeth Schulman, by and through undersigned counsel, respectfully submits this reply in support of his Motion to Exclude Expert Testimony or, in the Alternative, Compel Supplementary Expert Disclosure under Rule 16(a)(1)(G)(iii). The government argues that the "historical political environment, government structures, and security challenges in Somalia are inextricably intertwined with the conduct alleged in this case" but simultaneously asserts that it should not be required to substantiate the testimony of its sole expert witness as to the noticed topics. *See* ECF No. 464 at 2, 15-18. Many of the witnesses who are now unavailable due to the government's delay could have testified to the noticed facts: the freezing of Somalia's assets by Governor Amalow in the early 1990s, the formation of the transitional government, and the establishment of a permanent federal government in 2012. *See* ECF No. 308 at 37-47 (identifying President Ahmed, President Mohamud, Governor Amalow, Foreign Minister Adam, Deputy Chief of Staff Thabit Abdi, Governor Omer, and Ambassador Duale as unavailable); ECF No. 464 at 3. Now, the government seeks to reap the benefit of its delay by noticing an expert witness on these topics when (1) none of the first-hand participants in these events are available to testify to the noticed testimony; (2) the noticed expert does not qualify as an expert to testify to these topics; and (3) Mr. Schulman cannot effectively cross examine the noticed expert because

1

the government has not satisfied its disclosure obligations under Rule 16. For the reasons set forth below and as set forth in Mr. Schulman's Motion to Exclude Expert Testimony or, in the Alternative, Compel Supplementary Expert Disclosure under Rule 16(a)(1)(G)(iii), the Court should exclude the testimony of Mx. Brown.

**I.     Mx. Brown is not qualified as an expert witness.**

While the "rejection of expert testimony is the exception rather than the rule," See ECF No. 464 at 7, the government still bears the burden of establishing its expert's qualifications. *See Young v. Swiney*, 23 F. Supp. 3d 596, 610 (D. Md. 2014); *United States v. Davis*, 602 F. Supp. 2d 658, 681 (D. Md. 2009); *Main St. Am. Group v. Sears, Roebuck, & Co.*, No. 08-cv-3292, 2010 U.S. Dist. LEXIS 22667, at *8 (D. Md. Mar. 11, 2010).

The government's filing presumes Mx. Brown's expertise by virtue of their work experience and fails to address Rule 702 requirement that when a proffered expert's testimony is based on experience alone, the proponent but establish "how [that] experience leads to the conclusion reached, why [that] experience is a sufficient basis for the opinion, and how [that] experience is reliably applied to the facts." *United States v. Wilson*, 484 F.3d 267, 274 (4th Cir. 2007) (quoting Fed. R. Evid. 702 advisory committee's note). The government's failure to connect Mx. Brown's experience to the proffered testimony precludes this Court from recognizing Mx. Brown as an expert. For example, the government touts Mx. Brown's experience as a lecturer at the Rift Valley Institute, ECF No. 464 at 8, but a closer review of Mx. Brown's CV confirms that this testimony related to "Djiboutian domestic politics and the role of foreign actors in Djibouti." ECF No. 424-2 at 3. This experience has nothing to do with Somalia. Similarly, Mx. Brown's CV states that they provided "briefing on Somali electoral politics for Deputy Secretary of State Wendy Sherman," *id.* at 3, but Deputy Secretary of State Sherman did not serve in this role until 2021. *See* https://www.state.gov/biographies/wendy-r-sherman. This experience has no connection with

events in Somalia from 2009 through 2014.  As the Fourth Circuit has explained, "it is the quality of the expert's qualifications that a district court must focus on."  *See United States v. Young*, 916 F.3d 368, 380 (4th Cir. 2019) (internal citations omitted).

## II.     Mx. Brown's testimony is neither relevant nor reliable.

The government's failure to establish Mx. Brown's expertise similarly requires the Court to conclude that Mx. Brown's testimony is neither reliable nor relevant.  The government explains that Mx. Brown's testimony is based on their "collection, review, and analysis of significant quantities of information."  *See* ECF No. 464 at 10.  However, even those cases cited by the government recognize that expert testimony based in social sciences, as Mx. Brown's testimony is, must be subject to peer review.  *See United States v. Hammoud*, 381 F.3d 316, 337 (4th Cir. 2004) (expert testimony on terrorist organization Hizballah was subject to peer review and the expert witness discussed his findings and conclusions with others to ensure their soundness).  Mx. Brown's "expertise" and resulting opinions are entirely untested.  Further, neither this Court nor Mr. Schulman can test this expertise because the government has not disclosed the "significant quantities of information" on which Mx. Brown's testimony is based.

The government relies on a series of cases that it argues stands for the proposition that "courts have admitted expert testimony on historical context and the structure, leaders, and operations of organizations."  ECF No. 464 at 12.  Each of those cases dealt with the admission of expert testimony regarding criminal and terrorist organizations.  *See*, *e.g.*, *United States v. Diaz*, 2023 U.S. App. LEXIS 25846, at *5 (4th Cir. Sept. 29, 2023) (stating "our practice is to generally allow[] expert testimony on gang communications, structures, and practices.") (quoting *United States v. Zelaya*, 908 F.3d 920, 930 (4th Cir. 2018) (internal citations omitted).  The Somali government is neither a criminal nor a terrorist organization.  The cases cited by the government do not provide authority for this Court to permit an expert to testify regarding a country's history

3

and organization when the government cannot establish the witness's expertise as to these subjects. *See United States v. Locascio*, 6 F.3d 924, 938 (2d Cir. 1993) (stating that "a district court is not bound to accept expert testimony based on questionable data simply because other experts use such data in the field"). *Contra United States v. Diaz*, 2023 U.S. App. LEXIS 25846, *5 (4th Cir. Sept. 29, 2023) (expert's testimony was based on "years of law enforcement experience" and "included investigating crimes involving MS-13 members, listening to hundreds of recorded phone calls between gang members, regularly interviewing gang members as part of investigations, and attending trainings and travelling internationally to San Salvador to learn about MS-13."). This Court should accordingly find that Mx. Brown's testimony is neither relevant nor reliable and exclude their testimony.

**III.    Mx. Browns' testimony will not help the trier of fact.**

The government wants to have it both ways, arguing that it was not required to notice Mx. Brown's testimony pursuant to Rule 16, *see* ECF No. 464 at 16, n. 4, while noticing unsubstantiated opinions regarding corruption in the Somali government. The government defends Mx. Brown's testimony that the Central Bank in 2012 was "rife with corruption" because it does not "connect the Defendant to any specific corruption." *See* ECF No. 464 at 14. On the one hand, if the government does not intend to tie this testimony to the charged conduct, then such testimony is irrelevant and should be excluded. On the other and, if the government seeks to admit this testimony to contextualize the charged conduct, then such testimony is unfairly prejudicial and should be excluded. *See United States v. Hassan*, 742 F. 3d 104, 131 (4th Cir. 2014) (limiting expert's testimony regarding terrorist group by extremist Islamic groups). Exclusion is further warranted were, as here, Mx. Brown's testimony that the Central Bank was rife with corruption is based upon Mx. Brown's unspecified experience as an intelligence analyst. Indeed, none of the articles identified in the government's Rule 16 expert disclosure bear upon this opinion. Four of

the articles identified in the expert disclosure were authored before 2011 and are not relevant to this testimony.[1] Three of the identified articles were authored between 2012 and 2014.[2] Only one 2012 article references the Central Bank of Somalia.[3] This article references conduct by individuals associated with the Central Bank of Somalia from 2000 to 2011—a period during which the government alleges that Mr. Schulman was not retained by any Somali official affiliated with the Central Bank of Somalia. *See id. See also* Ind. ¶¶ 30, 37. Such testimony is thus irrelevant and unfairly prejudicial. *See Hassan*, 742 F. 3d at 131 (4th Cir. 2014) (trial court limited testimony regarding extremist Islamic groups to "only expert testimony relevant to the case") (quoting *United States v. Boyd*, No. 5:09-cr-00216, 2011 U.S. Dist. LEXIS 100208 (E.D.N.C. Sept. 16, 2011), ECF No. 1443).

To the extent Mx. Brown's testimony consists of facts that unavailable witnesses could have testified to but for the government's delay in prosecuting this case, Mr. Schulman is unfairly prejudiced by the government's use of Mx. Brown's testimony as a substitute for their testimony.

---

[1] Gérard Prunier, *Somalia: Civil War, Intervention and Withdrawal 1990 – 1995*, Refworld (Jul. 1, 1995), https://www.refworld.org/reference/countryrep/writenet/1995/en/54273; Per Wam, *Conflict in Somalia: Drivers and dynamics (English)*, The World Bank (May 21, 2024, 10:25 AM), https://documents.worldbank.org/en/publication/documents-reports/documentdetail/655761468332449283/conflict-in-somalia-drivers-and-dynamics; Stephanie Hanson and Eben Kaplan, *Somalia's Transitional Government*, Council on Foreign Relations (last visited May 21, 2024) https://www.cfr.org/backgrounder/somalias-transitional-government; Sally Healy and Mark Bradbury, *Endless war: a brief history of the Somali conflict*, Conciliation Resources (Feb. 2010), https://www.c-r.org/accord/somalia/endless-war-brief-history-somali-conflict.

[2] Marie Chéne, *Overview of corruption and anti-corruption in Somalia*, U4 Anti-Corruption Resource Center, (July 13, 2012), https://www.u4.no/publications/overview-of-corruption-and-anti-corruption-in-somalia.pdf; Rasna Warah, *New Report Reveals Somalia's Missing Millions*, Foreign Policy in Focus (last visited May 21, 2024), https://fpif.org/new_report_reveals_somalias_missing_millions/; John Campbell, *The Somali Prime Minister Merry-Go-Round Council*, Council on Foreign Relations (Dec. 5, 2014, 11:50 AM), https://www.cfr.org/blog/somali-prime-minister-merry-go-round.

[3] Rasna Warah, *New Report Reveals Somalia's Missing Millions*, Foreign Policy in Focus (last visited May 21, 2024), https://fpif.org/new_report_reveals_somalias_missing_millions/.

Mx. Brown's testimony will not help the trier of fact as compared to the testimony of Governor Amalow, who froze Somalia's assets in the early 1990s; President Sheikh Sharif Ahmed, who communicated Mr. Schulman regarding efforts to unfreeze the assets beginning in 2009; President Mohamud, who directed the asset recovery project beginning in late 2012; Foreign Minister Adam, who communicated with the Department of State regarding the recognition of the Somali government for purposes of recovering Somalia's assets; or Governor Omer, who served as the governor of the Central Bank of Somalia during the charged conspiracy. The government should not be entitled to present testimony of a biased and unqualified expert when it declined to interview these individuals across its seven-year investigation and has caused these witnesses to become unavailable to Mr. Schulman through its delay in prosecuting this case.

## IV. Mx. Brown's testimony was insufficiently noticed.

The Court serves as a gatekeeper "to verify that expert testimony is based on 'sufficient facts or data.'" *See E.E.O.C. v. Freeman*, 778 F.3d 463, 472 (4th Cir. 2015). This Court cannot verify that Mx. Brown's testimony is based upon sufficient facts or data because the government's disclosure does not satisfy Rule 16. The disclosure does not include a complete statement of all opinions that the government will elicit from Mx. Brown or the bases and reasons for their testimony. Mx. Brown should not be permitted to testify as to any subject for which the government has not satisfied Rule 16's disclosure requirements.

## CONCLUSION

For the foregoing reasons, Mr. Schulman respectfully asks that the Court grant Mr. Schulman's Motion to Exclude Expert Testimony or, in the Alternative, Compel Supplementary Expert Disclosure under Rule 16(a)(1)(G)(iii).

Dated: May 21, 2024                                Respectfully submitted,

*s/ Paul W. Butler*
Paul W. Butler (*Pro Hac Vice*)
Allison T. Coffin (*Pro Hac Vice*)
Madeline M. Bardi (*Pro Hac Vice*)
Akin Gump Strauss Hauer & Feld LLP
Robert S. Strauss Tower
2001 K Street NW
Washington, DC 20006
202.887.4000 (telephone)
202.887.4288 (facsimile)
pbutler@akingump.com
acoffin@akingump.com
mbardi@akingump.com

Stanley E. Woodward, Jr. (Md. Bar No. 18115)
Brand Woodward Law, LP
400 Fifth Street NW, Suite 350
Washington, DC 20010
202.996.7447 (telephone)
202.996.0113 (facsimile)
stanley@brandwoodwardlaw.com

*Counsel for Defendant Jeremy Wyeth Schulman*

**CERTIFICATE OF SERVICE**

On May 21, 2024, the undersigned hereby certifies that a true and correct copy of the foregoing was electronically filed and served via the CM/ECF system, which automatically sends electronic notification of such filing to all registered parties.

*s/ Paul W. Butler*
Paul W. Butler (*Pro Hac Vice*)
Akin Gump Strauss Hauer & Feld LLP
Robert S. Strauss Tower
2001 K Street NW
Washington, DC 20006
202.887.4000 (telephone)
202.887.4288 (facsimile)
pbutler@akingump.com

*Counsel for Defendant Jeremy Wyeth Schulman*